**LACKAWANNA COUNTY.**

JANUARY TERM, 1884, No. 50.	FEBRUARY 27, 1884.

4 P  243
25 SC 4 26
25 SC 4582
4 P  243
28 SC 4634
4 P  243
33 SC 4407

## Grambs *v.* Lynch *et al.*

1. In an action of ejectment, defendants offered in evidence the exemplification of the record of the judgment upon which the real estate in controversy was sold, and under which defendants claimed title. The certificate of the prothonotary, which was printed in defendants' but not in plaintiff's paper-book, set forth " that the above and foregoing is a true and correct copy of the whole record  *  *  *  so full and entire as the same now remains of record and on file in said court." *Held*, that this certificate was sufficient to entitle the exemplification to be admitted in evidence.

2. Plaintiff's objection that the certificate is defective, inasmuch that it does not purport to certify the whole record, might be answered by saying that said certificate is not printed in plaintiff's paper-book with the record.

3. Where the sheriff's deeds for the real estate in controversy had been altered by erasing in the description the words " city of Scranton," and writing over the erasure the words " borough of Dunmore," the testimony of the deputy sheriff that he made the alterations before the deeds were acknowledged, and without the privity of the purchaser, removed the objection to their admissibility.

4. The Court below charged the jury that " where a witness goes upon the witness-stand and swears positively to a fact, and that fact is not contradicted, it is established, and there is nothing to submit to a jury. We say to you there is nothing in this case for you to pass upon, save only to agree to a verdict in favor of these defendants." *Held*, to be error, as the question of the credibility of the witness cannot be taken from the jury.

5. Where exceptions are taken to a portion of the charge and to an answer to a point submitted, which have no separate bearing on the case, and the instructions thereunder could have done no harm, they will be dismissed.

[Grambs *v.* Lynch *et al.*]

Before MERCUR, C. J.; GORDON, PAXSON, TRUNKEY, STERRETT, GREEN, and CLARK, JJ.

Error to the Court of Common Pleas of *Lackawanna County*.

Ejectment by Charles H. Grambs against I. V. Lynch, J. C. Miles, assignee of I. V. Lynch, Peter Davidson, and Charles P. Davidson, assignee of John Stuart, defendants, and Oscar F. Freeman and Thomas Davidson, terre tenants.

Upon the trial in the court below before HANDLEY, P. J., the following facts appeared :

On March 11, 1872, an execution issued upon a judgment in the court of common pleas of Luzerne county in favor of I. V. Lynch to the use of R. L. Beecher *v.* Charles Grambs. By virtue of this execution levy was made on two lots of land, the ownership of which was in the defendant. The lots were described in the levy as being "situated upon the easterly side of Franklin avenue, in the city of Scranton, county of Luzerne, and State of Pennsylvania," and as being lots numbers three and four "in square or block number three hundred and six (306) upon the plot of Meylert's addition to the city of Scranton and Green Ridge." These two lots adjoined each other, were of the same size, each having a two-story plank dwelling-house and barn. These lots, however, were not actually within the corporate limits of the city of Scranton. The borough of Dunmore had a prolongation of narrow width reaching out into and cutting through the territory of the city of Scranton, and terminating in a point on the bank of the Lackawanna river. A. N. Meylert had owned a piece of land covering a portion, if not the whole, of the said prolongation of the borough of Dunmore. As the growth of the city increased, its streets were extended, and ran directly across this prolongation. On the northeasterly side, George Sanderson, many years before, had laid out a town plot and gave it the name of Green Ridge. The trustee for creditors of Meylert caused his land at the place in question to be subdivided, and styled the plot "Meylert's addition to the city of Scranton and Green Ridge." The two lots levied upon, as aforesaid, were on this plot, and were sold by the sheriff on the 6th day of April, 1872. They were bought by Peter Davidson for $4,210.

The attention of Grambs, the defendant in the execution, was called to the advertisement of the sheriff's sale. He recognized it as describing his property, and attended the sale. After the sale he endeavored to procure it to

[Grambs *v.* Lynch *et al.*]

be set aside, because of misdescription, on the ground that the property was in Dunmore borough instead of the city of Scranton as advertised. The rule to set aside the sale was discharged, and on January 25, 1873, the sheriff's deeds for the lots were acknowledged in open court.

Defendants' counsel offered in evidence exemplification of the record of judgment No. 1922, October term, 1871, court of common pleas of Luzerne county, in favor of I. V. Lynch, assigned to R. L. Beecher against Charles H. Grambs.

Mr. SMITH. We object to the offer that the certificate of the prothonotary is insufficient, and does not entitle the record to go in evidence. That it appears upon the face of the record that a portion of it is not certified. It appears in the certificate that it is the suit of R. L. Beecher, plaintiff, and Charles H. Grambs, defendant. For those reasons it is not properly admissible.

The COURT. Do you claim that this entry here in this language is a part of the record? The petition for the rule to show cause why the sheriff's sale shall not be set aside in this case, and the order of said court granting the rule, are not in the files and cannot be found after due diligence. Do you claim that is a part of the record?

Mr. FARNHAM. Well, I don't suppose it would be a part of the record.

The COURT. Do you claim this is a part of the record? "Lynch *v.* Grambs. Wilkes-Barre, September 1, 1872. If John Shouse does not comply with his bid, let writ be stayed.

(Signed)                    CHARLES H. GRAMBS."

Is that part of the record in this case?

Mr. FARNHAM. I simply offer the certificate there.

The COURT. Judge Streeter, in passing upon this question in Montrose, where an exemplification from Pike county was offered, showing an award of arbitrators in the suit of Charles Biddee *v.* J. B. Quick, this exemplification was objected to for three reasons, the last of which was that it is not an entire record, and the part omitted was a part of some documents signed by a man by the name of F. A. L. Smith. Judge Streeter admitted the exemplification except as to that part and as to that he sealed a bill. Now we are willing to pursue the same course in this case. We will admit this exemplification, omitting this paper marked exhibit A, and also paper marked exhibit B. That leaves the question open for you to go before the jury and argue that the whole record in this case has not been presented.

[Grambs *v.* Lynch *et al.*]

Mr. FARNHAM. I understand your honor admits the record as exemplified, if we state we do not claim them as part of the record.

The COURT. If you do not claim these two papers I have had marked, then you take your chances of producing evidence showing the loss of the other papers.

Mr. FARNHAM. I understand your honor to admit the paper as evidence?

The COURT. Yes, sir; with the exception of those two papers. In other words, I rule on that paper as Judge Streeter did in the case from Pike county.

Mr. SMITH. We ask for an exception.

The COURT. Exception noted for plaintiff, at whose request a bill is sealed.

Mr. FARNHAM. If it is admitted for just that purpose without having the effect of a record, then I do not admit this is no part of the record.

The COURT. We admit it for all it is worth just as you have it made up. We exclude those two papers because they are not part of the case. We will admit it with the exception of those two papers.

Mr. FARNHAM. I do not wish to be understood that when I made the admission at the request of the court that the two papers referred to by the court would not be taken as part of the record. That I made it absolutely, but only with the understanding that the court admitted the record generally as an exemplification under the certificate of the prothonotary.

Mr. SMITH. We object to the reading of that record or any portion of it to the jury until it is shown by evidence other than the record that a due and diligent search has been made.

The COURT. Objection overruled. All of the exemplification permitted to be read to the jury with the exception of the papers marked exhibit A and B. (First assignment of error.)

The prothonotary's certificate above referred to was not printed in plaintiff's paper-book, but appears in the appendix to defendants' paper-book, and is as follows:

"STATE OF PENNSYLVANIA, } *ss:*
    *County of Luzerne.*        }

           I, JAMES M. NORRIS, Prothonotary of the
[SEAL.] Court of Common Pleas, in and for said county
           of Luzerne, do certify that the above and forego-
ing is a true and correct copy of the whole record of the case therein stated, wherein I. V. Lynch, assigned to R. L.

[Grambs *v.* Lynch *et al.*]

Beecher, is plaintiff, and Charles Grambs is defendant, so full and entire as the same now remains of record and on file in said court.

In witness whereof, I have hereunto set my hand and affixed the seal of said court at Wilkes-Barre, this thirteenth day of January, Anno Domini one thousand eight hundred and eighty-three.

JAMES M. NORRIS,<br>
*Prothonotary.*"

The defendants' counsel offered, in evidence, exemplification of the record from the court of common pleas of Luzerne county, of two deeds recorded in the sheriff's deed book, in Luzerne county; one being for lot No. 3, and the other for lot No. 4, in block No. 306, upon the plot of Meylert's addition to the borough of Dunmore and Green Ridge. The rest of the description is the same as in the levy.

Mr. SMITH. We object to the evidence.

Mr. FARNHAM. We propose to explain this discrepancy.

The COURT. He says he proposes to follow it and explain the discrepancy between the execution and the deed made. You had better call a witness and do that now.

Mr. FARNHAM. I will withdraw the offer for the present.

B. F. LOUDER called and sworn for defendants:

*Q.* State whether or not you were deputy sheriff in April, 1872.

*A.* I was.

*Q.* Under Sheriff Whitaker?

*A.* Yes, sir.

*Q.* You were in the office there?

*A.* Yes, sir.

*Q.* (Paper shown witness.) Whose signature is that?

*A.* Mine.

*Q.* (Paper shown witness.) Whose signature is that?

*A.* Mine; that is my signature.

Mr. FARNHAM. I now offer these two deeds in evidence.

Mr. SMITH. We object to the admission of these deeds in evidence, for the reason that they appear to have been altered in a material part; we allege that the words, "Borough of Dunmore," have been interlined there, and some words have been erased, and the borough of Dunmore written in. Until it is explained we object to the offer.

[Grambs *v.* Lynch *et al.*]

Mr. FARNHAM.   We propose to do that.

The COURT.   Deeds admitted in evidence ; exception noted for plaintiff, at whose request a bill is sealed.

(Second assignment of error.)

The witness further testified that the deed was written by a clerk about the office, that the alteration, by inserting the words "Borough of Dunmore," was made by him, and that it was done by order of witness, after the deed was drawn and before acknowledgment.

The alterations were made without the knowledge or privity of Peter Davidson, the purchaser.

The purchase money paid by Davidson was distributed by the court, through the medium of an audit, to the lien creditors of Grambs.

At the time of the sheriff's sale, Boyce was attorney for the plaintiff Grambs, had drawn leases to some of the tenants, and collected the rents.   Davidson knew this, and afterwards had Boyce to renew the leases in his name. Boyce informed Grambs that he had handed the leases over to Mr. Price.   Price took charge of the properties, and collected the rents for Davidson.

A dispute arose between Davidson and I. V. Lynch, regarding the ownership of the property, Lynch alleging that he furnished the purchase money to Davidson, for the purpose of having it bought in for him.   Afterwards Lynch made an assignment for the benefit of his creditors to J. C. Miles.   Davidson conveyed the property to John Stuart, who made an assignment for the benefit of his creditors to Charles P. Davidson.   An amicable ejectment was then instituted between the assignees of Lynch and Stuart, to determine as between the Lynch and Davidson titles, it being agreed that Mr. Price, the agent, should, meanwhile, collect the rents, and hold them for the party finally found to be the owner.

Defendants' attorney presented the following point for charge :

"That under the law and the evidence in the case, the plaintiff is not entitled to recover, and the verdict must be for the defendants."

This was affirmed by the court.

(Third assignment of error.)

Plaintiff's attorney presented, *inter alia*, the following point :

"In an action founded upon a deed, a material part of it cannot be contradicted or explained away by parol evidence, except inserted through fraud or mistake."

The Court answered as follows :

[Grambs *v.* Lynch *et al.*]

"Well, now you have heard what the witnesses said about the location of this property, and you have heard what Louder, the chief clerk of the sheriff, said, hence, we say to you, while this is good law, it does not control the disposition of this case, and, although we affirm it, as we now do as a correct legal proposition, it cannot and should not control the disposition of this case."

(Sixth assignment of error.)

The Court, thereupon, charged the jury, *inter alia*, as follows :

"Ought we to permit you to say that when Louder went upon the witness-stand, and testified as to the alterations, that it was made before or after the acknowledgment of the deed, when he testified in the manner that he did, and it is not contradicted? We never submit a question of fact to a jury unless one witness goes upon the witness stand and swears to one thing, and another witness contradicts him ; where A goes upon the witness-stand and swears the cloth was black, and another witness goes upon the witness-stand and swears it was white, there is a direct contradiction, and in cases of that kind we always submit to the jury the question in dispute. But there is no evidence in this case, remember, contradicting Mr. Louder, or contradicting Mr. Sahm, the chief clerk of the prothonotary, or contradicting the sheriff, Whitaker. Where a witness goes upon the witness-stand and swears positively to a fact, and that fact is not contradicted, it is established in the eyes of the law, and there is nothing to submit to the jury. We say to you that there is nothing in this case for you to pass upon, save only to agree upon a verdict in favor of these defendants."

(Fourth assignment of error.)

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

"Now, if he had paid all this judgment by excessive interest, as said by counsel, to these parties, or if this judgment was given for excessive interest in any other transaction that happened between these parties, he had two ways to defeat the collection of that judgment. He had, first, the right to go to Lynch and pay it, and at any time within six months thereafter bring an action to recover such excessive interest, with costs ; that is one way he could pursue under the statute of 1858. The other way was to go into court, and, by filing proper affidavits, ask for a rule to show cause why the judgment should not be marked paid, and then, upon taking testimony and bringing home conviction to the mind of the court and the jury that would try the case, that this judgment

[Grambs *v*. Lynch *et al*.]

was based solely upon usury ; that it was given for ex-
cessive interest over and above six per cent., the judg-
ment would have been marked 'of record satisfied, and
Lynch would have held no judgment against this plain-
tiff, and hence no execution could have issued. Now,
who is to blame because there is a fatal omission in this
case ? Mr. Grambs, as you will see, is a German, and
while the law presumes every man understands the law,
yet we, as men, fully understand that a man of Grambs'
nationality depends more or less upon some other person
to watch his legal rights. Now. who was it that betrayed
him ? [Did he put this matter into the hands of counsel,
and did that counsel, or his lawyer, betray him ? If he
did, you certainly will not say, and ought not to say,
that there is any one to blame for that but himself, be-
cause, when two men deal together, if one betrays the
other, that is no reason why a third party should suffer.]
(Fifth assignment of error.)

April 7, 1883, verdict for defendants, upon which judg-
ment was subsequently entered.

Plaintiff then took out a writ of error, and assigned
the six errors set forth above.

*Ranck* & *Smith* for plaintiff in error.

The record admitted in evidence shows a levy upon two
lots in the city of Scranton, while the sheriff's deeds de-
scribe them as being in the borough of Dunmore.

In the absence of fraud or mistake, the testimony as to
the alteration of the deeds was not admissible ; but if it
was admissible, it was error to withdraw from the consid-
eration of the jury the effect of such testimony and the
credibility of the witness : Wh. Crim. Ev., s. 531. The
right to determine the facts is with the jury. The jury
should have had submitted to them the right to deliberate,
examine, weigh, and determine the effect of such evi-
dence, to say by their verdict whether the evidence of
one witness satisfies them of the truth of his statement.

If the defendants obtained possession in an improper
way, the jury should have been allowed to pass upon
that question.

*Edward Miles* and *Alexander Farnham* for defendants
in error.

The prothonotary's certificate to the exemplification
conforms to all the requirements : Eberts *v*. Eberts, 5 P.
F. Sm., 120 ; Improvement Co. *v*. McCreary, 8 *Id*., 304 ;
Reber *v*. Wright, 18 *Id*., 471.

[Grambs v. Lynch et al.]

The testimony shows that the alterations in the sheriff's deeds were made before the deeds were acknowledged, and that the purchaser was ignorant of the alterations having been made.

The evidence showing that plaintiff had no title to the property, that it had become divested by the sheriff's sale, was undisputed, and the Court was therefore right in affirming defendants' point.

March 17, 1884, the opinion of the Court was delivered by PAXSON, J.:

We are unable to see any sufficient reason why the exemplification referred to in the first assignment of error should be excluded. It was the record of the judgment upon which the real estate in controversy was sold. The objection that the certificate of the prothonotary is defective, inasmuch that it does not purport to certify the whole record, might be answered by saying that said certificate is not printed in plaintiff's paper-book with the record. It appears, however, in the defendants' book, and from it we learn that the prothonotary certified "that the above and foregoing is a true and correct copy of the whole record * * * so full and entire as the same now remains of record and on file in said court." That this was sufficient is settled by Eberts v. Eberts, 5 P. F. S., 120; Improvement Company v. McCreary et al., 8 Id., 304; Reber v. Wright, 18 Id., 471. The Court below committed no error in admitting this paper.

The objection to the exemplification of the two sheriff's deeds (see second assignment) is equally void of merit. There was an erasure and interlineation in each deed, the words "Borough of Dunmore" having apparently been written over an erasure. This affected the description of the property, but the deputy sheriff was called and testified that he made the alterations before the deeds were acknowledged and without the privity of the purchaser at the sheriff's sale. This removed the objection to the admissibility of the deeds.

The third and fourth specifications may be considered together. In answer to the defendants' point, the Court instructed the jury: "That under the law and the evidence in the case, the plaintiff is not entitled to recover, and the verdict must be for the defendants." The learned judge appears to have been under the impression that, because certain witnesses were not contradicted upon a particular point, there was nothing for the jury to find. This will appear from an extract from his charge, (see

[Wade *v.* Fahrig.]

fourth specification:) " Where a witness goes upon the witness stand and swears positively to a fact, and that fact is not contradicted, it is established, and there is nothing to submit to a jury. We say to you, there is nothing in this case for you to pass upon, save only to agree to a verdict in favor of these defendants."

This is an erroneous statement of the case. There is the question of the credibility of the witness, and this cannot be taken from the jury. It is their duty to credit a witness if there is no good reason to the contrary, but the mere manner of a witness may discredit him with the jury, and his story may be so against all the probabilities of the case that a jury may be justified in not believing him. It is settled law that when a case depends upon oral testimony, such testimony must be submitted to the jury. Authorities are hardly needed for so obvious a proposition. It is sufficient to refer to Lamb *v.* Irwin, 19 P. F. S., 436.

The fifth and sixth assignments may be dismissed with the remark that the portion of the charge of the Court contained in the fifth, and the point and answer embraced in the sixth, had no separate bearing upon the case, and the instructions complained of could have done the plaintiff no harm. But for the errors already noticed, the judgment must be reversed.

Judgment reversed and a *venire facias de novo* awarded.